1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAN ROE, a single woman,<br><br>              Plaintiff,<br><br>     v.<br><br>DEUSTCHE BANK NATIONAL TRUST CO., N.A., a New York Corporation, as Trustee for ARGENT SECURITIES ASSET BACKED PASS THROUGH CERTIFICATES, SERIES 2006-W3, INC., a Delaware corporation, and PHH MORGATE CORP., a New Jersey corporation, d/b/a PHH MORTGAGE CO.,<br><br>              Defendants. | Case No. 3:24-cv-05338<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION FOR SANCTIONS |

## I.    INTRODUCTION

Before the Court are Defendants Deutsche Bank, Argent Securities, and PHH Mortgage's motion to dismiss for failure to state a claim, Dkt. 12, and motion for sanctions against Plaintiff Jan Roe, Dkt. 33.

Roe first filed this case in state court in 2020. She claimed that her bankruptcy discharge several years prior had started the clock on the statute of limitations for a deed of trust on a loan held by Defendants. She argued that the statute of limitations had lapsed, entitling her to quiet title on the underlying property. At the time, the law on this issue was murky, but, while her state

action was pending, the Washington Supreme Court clarified that bankruptcy discharge had no such effect on the statute of limitations. Shortly thereafter, Roe voluntarily dismissed her state court case and refiled in this Court. She urged this Court to disregard the Washington Supreme Court's holdings, arguing that the Supremacy Clause foreclosed its interpretation of the law.

Defendants moved to dismiss for failure to state a claim. They maintained that there was no conflict between state and federal law. They asked the Court to find that the Washington Supreme Court's ruling controlled the case. The Court agrees, employing the state court's interpretation of the statute of limitations and finding no conflict between state and federal law. The Court thus GRANTS Defendants' motion to dismiss for failure to state a claim and DISMISSES the complaint with prejudice.

Defendants also moved for sanctions against Roe and her counsel. They requested the Court sanction Roe for refiling the case in federal court, asserting that she and her counsel acted in bad faith by filing frivolous and meritless litigation.

But the record before the Court is insufficient to make that finding and Defendants failed to abide by the procedural requirements of relevant sanctions rules. The Court DENIES the motion for sanctions.

## II.    FACTUAL BACKGROUND

Plaintiff Jan Roe is the owner in fee simple of real property in Chehalis, Washington. Dkt. 1 ¶ 1.4. In 2006, as part of a mortgage loan transaction, Roe granted a deed of trust to Defendant Argent Mortgage Company. *Id.* ¶ 2.1; Dkt. 13 at 5. The deed of trust provided that the underlying loan had a maturity date of February 1, 2036. Dkt. 13 at 5. Until that date, Roe was to make periodic payments on the loan. Dkt. 13 at 7. The deed of trust was subsequently assigned to Defendant Deutsche Bank. Dkt. 1 ¶ 2.2; Dkt. 13 at 24–25.

On December 10, 2010, Roe filed for Chapter 7 bankruptcy. Dkt. 1 ¶ 2.3. Roe listed the property as an asset in her bankruptcy schedules. *Id.* Defendants were listed as creditors holding claims on loans secured by Roe's Chehalis property. *Id.* Defendants' authorized representative testified at a hearing in the bankruptcy case. *Id.* ¶ 2.13. The representative noted that Roe had failed to make a payment on the deed of trust's underlying loan since June 30, 2006. *Id.*

On March 23, 2011, Roe obtained a bankruptcy discharge. *Id.*; *see also id.* ¶ 2.14. She has made no payments on the underlying note since the date of her bankruptcy filing. *Id.* ¶ 2.17.

On January 7, 2020, Roe sued in Lewis County Superior Court seeking to quiet title on Defendants' deed of trust. Dkt. 34-1 at 1; *see generally* Dkt. 34-2. The deed of trust entitled Defendants to foreclose on the property. Dkt. 13 at 11. Under Washington state law, before the statute of limitations on a loan runs, a creditor may pursue a foreclosure action if the loan secures a mortgage. RCW 7.28.230. After the statute of limitations lapses, creditors lose their ability to foreclose. RCW 7.28.300; Dkt. 1 ¶ 2.22. The debtor may then file a case to quiet title on the property, permanently denouncing any claims the creditor held under the loan terms. RCW 7.28.300.

Roe asserted that her 2011 bankruptcy discharge triggered the acceleration of the loan. Dkt. 34-2 at 8–9. As such, Roe claimed, the statute of limitations on the loan had begun to run as of the 2011 discharge. *Id.* at 9. She maintained that the loan was now barred by the statute of limitations, which had ended in 2017. *Id.*[1] Thus Roe argued that she was entitled to quiet title on the property, terminating Defendants' rights to the property under the deed of trust. *See id.*

---

[1] Under Washington state law, the statute of limitations for deeds of trust securing the obligations of promissory notes to be paid in installments is six years. *See* Dkt. 1 ¶ 2.19 (citing RCW 4.16.040).

As explained in the parties' briefing, at the time Plaintiff filed her case in Lewis County, Washington law on when the statute of limitations began to run was unsettled. Dkt. 34-5 at 5–6. Some courts had held that a bankruptcy discharge started the clock on all unpaid installments. *See id.*; *see also* Dkt. 20 at 8. But these cases had derived their rule from nonbinding dicta. *See* Dkt. 12 at 9.

Then, on April 11, 2022, Division One of the Washington Court of Appeals held that a bankruptcy discharge of personal liability did not modify the payment schedule or accelerate the maturity date of a note held by the debtor. *Copper Creek (Marysville) Homeowners Ass'n v. Kurtz*, 21 Wn. App. 2d 605, 508 P.3d 179 (2002); Dkt. 34-5 at 5–6. Roe requested a stay while *Copper Creek* was appealed, which the Superior Court granted. Dkt. 34-5 at 5–6; Dkt. 34-9 at 2–3. The Washington Supreme Court affirmed the lower court's decision. *Copper Creek (Marysville) Homeowners Ass'n v. Kurtz*, 1 Wn.3d 711, 730, 532 P.3d 601 (2023). On the same day, the Washington Supreme Court also decided *Merritt v. USAA Federal Savings Bank*, 1 Wn.3d 692, 532 P.3d 1024 (2023). That case affirmed a nearly identical proposition.

Both parties then stipulated to lifting the stay of Roe's case in Lewis County, and a hearing was scheduled for Defendants' motion to dismiss under Washington Civil Rule 12(b)(6). Dkt. 34-9. Two days before oral argument, Roe moved to dismiss her case voluntarily without prejudice. Dkt. 34-14 at 2.

On May 6, 2024, Roe filed a very similar case in this court. *See generally* Dkt. 1. The complaint again seeks to quiet title as to the deed of trust on the sole basis that the bankruptcy discharge triggered the acceleration of the underlying debt, resulting in the loan becoming barred by the statute of limitations in 2017. *See id.* ¶¶ 2.23, 2.24. Roe also added a new argument: she claims that the federal bankruptcy statute conflicts with Washington state law as laid out by the *Copper Creek* and *Merritt* decisions. *Id.* ¶¶ 2.25; Dkt. 20 at 9–11.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Defendants subsequently moved to dismiss for failure to state a claim. Dkt. 12. They also moved to impose sanctions on Plaintiff's counsel. Dkt. 33. Both motions are ripe for the Court's consideration.

### III.     MOTION TO DISMISS

**A.     Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) motions may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted). To survive a Rule 12(b)(6) motion, the complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party," *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014), but need not "accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555 (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**B.    Discussion**

        *1.    The deed of trust will not be fully matured until 2036.*

Defendants argue that Roe has failed to state a claim to quiet title on a statute of limitations theory. Dkt. 12 at 4. They maintain that, because the deed of trust will not be fully matured until 2036, and the deed has not been accelerated, the deed remains enforceable. *Id.*

The deed of trust is a written contract. *See 4518 S. 256th, LLC v. Karen L. Gibbon, P.S. (Gibbon)*, 195 Wn. App. 423, 434, 382 P.3d 1 (2016). Specifically, it is an installment contract, with payments to be made regularly over a set period of years. *See* Dkt. 13 at 5, 5; *see also Gibbon*, 195 Wn. App. at 434 (citing *Herzog v. Herzog*, 23 Wn.2d 382, 388, 161 P.2d 142 (1945)). On an installment contract, "the statute of limitations runs against each installment from the time it becomes due; that is, from the time when an action might be brought to recover it." *Id.* (citing *Herzog*, 23 Wn. 2d at 388); *Merceri v. Bank of N.Y. Mellon*, 4 Wn. App. 2d 755, 759–760, 434 P.3d 84 (2018) ("When recovery is sought on an obligation payable by installments, the statute of limitations runs against each installment from the time it becomes due; that is, from the time when an action might be brought to recover it.") (cleaned up). Each installment on a deed of trust functioning as an installment contract is thus subject to a six-year statute of limitations. *See Cedar W. Owners Ass'n v. Nationstar Mortg., LLC*, 7 Wn. App. 2d 473, 482, 434 P.3d 554 (2019) (promissory note and deed of trust are written contracts subject to the six-year statute of limitations period).

But an installment contract can be accelerated. *See Gibbon*, 195 Wn. App. at 434–35 (citations omitted); *see also* RCW 7.28.300. If a loan paid in installments is accelerated, the

entire remaining balance comes due, and the statute of limitations is triggered for all installments. *See Gibbon*, 195 Wn. App. at 434–35. To accelerate the loan, some affirmative action is required through which "the holder of the note makes known to the payors that he intends to declare the whole debt due." *Id.* at 435 (quoting *Glassmaker v. Ricard*, 23 Wn. App. 35, 37, 593 P.2d 179 (1979)). Washington courts have held that default is not an accelerant. *Id.* (citing *A.A.C. Corp. v. Reed*, 73 Wn.2d 612, 615, 440 P.2d 465 (1968)). Rather, acceleration "must be made in a clear and unequivocal manner which effectively apprises the maker that the holder has exercised his right to accelerate the payment date." *Id.* (quoting *Glassmaker*, 23 Wn. App. at 38).

Here, the deed of trust secures an underlying loan on Roe's property. Dkt. 13 at 5. The loan was issued on January 17, 2006. *Id*. The final payment is due on February 1, 2036. *Id.* At that point, the loan will be fully matured, all payments having come due. *See id.* Unless the loan is or was accelerated, the statute of limitations has only begun to run on those payments that have already come due. *See Gibbon*, 195 Wn. App. at 434; *Merceri*, 4 Wn. App. at 759.

Roe argues that the loan was accelerated by her bankruptcy discharge in 2011. Dkt. 1 ¶ 2.22; Dkt. 20 at 2, 7–8. She claims that, as of that date, all payments were discharged and the clock began ticking down on the statute of limitations. Dkt. 20 at 2. She maintains that the time for foreclosure thus ran out in 2017. *Id.*

Washington courts have held to the contrary. First, in *Edmundson v. Bank of America*, the court clarified that, though bankruptcy discharges a debtor's personal debt on a loan underlying a deed of trust, the right to foreclose on the debt on the property remains. 194 Wash. App. 920, 926, 378 P.3d 272, 276 (2016), abrogated on other grounds by *Merritt v. USAA Fed. Sav. Bank*, 532 P.3d 1024 (Wash. 2023) and *Copper Creek (Marysville) Homeowners Ass'n v. Kurtz*, 532 P.3d 601 (Wash. 2023). The court concluded, "[n]othing under either federal or state law

1    supports the conclusion that the discharge of personal liability on the note also discharges the

2    lien of the deed of trust securing the note. The deed of trust is enforceable." *Id.*; *see also Copper*

3    *Creek*, 21 Wn. App. 2d at 615 ("A lien on real property passes through bankruptcy unaffected.")

4    (citation omitted).

5         Dicta in *Edmundson*, however, implied that the statute of limitations began running on

6    the date of discharge. *See* 194 Wn. App. at 931. Federal courts interpreted *Edmundson* to say

7    exactly that. *Merritt*, 1 Wn. 3d at 708 n.8 (citing cases). *Edmundson*, and those cases following

8    its dicta, were still good law when Roe filed her case in state court. *See Merritt*, 1 Wn. 3d at 705

9    (abrogating *Edmundson*).

10        In 2023, the Washington Supreme Court expressly disavowed *Edmundson*'s suggestion

11   regarding the limitations period. *Copper Creek*, 1 Wn. 3d at 718; *Merritt*, 1 Wn.3d at 705. In a

12   pair of cases, the Court clarified that a bankruptcy discharge of a borrower's personal liability on

13   an installment note does not trigger the statute of limitations to enforce the related deed of trust.

14   *Merritt*, 1 Wn.3d at 702–705; *Copper Creek*, 1 Wn.3d at 718. Thus, the statute of limitations to

15   enforce the deeds of trust had not begun to run. *Merritt*, 1 Wn.3d at 705; *Copper Creek*, 1 Wn.3d

16   at 718.

17        In the first case, *Copper Creek*, the defendants bought a home with a note secured by a

18   deed of trust. 21 Wn. App. 2d at 609. The property was subject to annual HOA fees. *Id.* The

19   Defendants vacated the property and stopped paying the note and the HOA dues. *Id.* They both

20   entered Chapter 7 bankruptcy. *Id.* at 609–10. Their personal liability was thus extinguished. *Id.*

21   The HOA began a judicial foreclosure action against the property for unpaid assessments. *Id.* at

22   610. The lender also began foreclosure proceedings and served the HOA with a trustee's notice

23   of sale. *Id.* at 610–11. The HOA filed a quiet title action. *Id.* at 611.

24

The defendants argued that because their bankruptcy discharge had occurred more than six years prior to the foreclosure the statute of limitations had run. *See id.* The Court of Appeals held that a bankruptcy discharge, by itself, does not automatically trigger the six-year statute of limitations for a deed of trust foreclosure. The court clarified:

> The statute of limitations ran against the deed of trust only to the extent it ran against the underlying debt. The underlying debt was an installment debt. The statute of limitations accrued on each individual installment as it came due. Bankruptcy discharge of the debtor did not extinguish the debt, modify the schedule of payments, or accelerate the maturity date. And, the lender did not accelerate the maturity date of the loan. The statute of limitations on each of the missed installments began running from the date they came due. Bankruptcy did not toll the statute of limitations. The discharge left intact the lender's option to enforce the debt against the property in rem.

*Copper Creek*, 21 Wn. App. 2d at 608. The court explained that it had not, in fact, held in *Edmundson* that the statute of limitations began to run on the date of bankruptcy discharge. *Id.* at 619–20.

> The Edmundsons had not asserted that the bankruptcy discharge triggered the running of the statute of limitations on the entire debt. It would have done them no good. The foreclosure was commenced less than a year after the discharge in bankruptcy. It simply was not an issue before the court. And, we did not decide the issue expressly or in dicta. Such a rule exists only in the inferences drawn and stated in the federal decisions.

*Id.* at 622. The Washington Supreme Court affirmed. *Copper Creek*, 1 Wn.3d at 718. The court clarified again that "[t]he six-year statute of limitations to foreclose on a deed of trust securing an installment loan accrues with each unpaid installment, even after the borrower's personal liability has been discharged in bankruptcy." *Id.*

The very same day, the Washington Supreme Court decided *Merritt*. Again, the Court held that a bankruptcy discharge does not trigger the statute of limitations to enforce a deed of trust. *Merritt*, 1 Wn. 3d at 703–04. The Merritts opened several home equity lines of credit with USAA, secured by deeds of trust. *Id.* at 695. They ultimately filed for Chapter 7 and were

discharged. *Id.* at 696. They stopped making monthly payments on the loans. *Id.* They then filed multiple quiet title complaints, arguing that the statute of limitations expired six years after their discharge. *Id.* at 696–97.

The Washington Supreme Court held that the Merritts' post-bankruptcy discharge only extinguished their personal liability under the loans. *Id.* at 702–03. As the court correctly explained, "the federal bankruptcy code and long-standing precedent limit the effect of a bankruptcy discharge on a secured debt." *Id.* at 702. Bankruptcy discharge thus does not "extinguish the underlying debt itself . . . 'only the personal liability of the debtor.'" *Id.* at 703 (first citing 11 U.S.C. § 524(a); and then quoting *Johnson v. Home State Bank*, 501 U.S. 78, 111 S. Ct. 2150, 115 L. Ed. 2d 66 (1991)). The creditor in *Merritt* thus retained its ability to foreclose upon the properties. *Id.* at 704–05.

Under both *Copper Creek* and *Merritt*, the statute of limitations on the entire deed of trust held by Defendants will not begin running until 2036. Roe has thus failed to state a claim on which relief can be granted.

> ### 2. *Copper Creek* and Merritt *overruled preceding case law—including federal cases relying on* Edmundson*.*

Roe argues that this Court should disregard *Copper Creek* and *Merritt*. Dkt. 20 at 7–8. Roe instead directs the Court to two federal cases applying *Edmundson*: *Jarvis v. Federal National Mortgage Association,* 726 F. App'x 666 (9th Cir. 2018) and *Hernandez v. Franklin Credit Management Corporation*, No. BR 18-01159-TWD, 2019 WL 3804138 (W.D. Wash. Aug. 13, 2019), aff'd sub nom. *In re Hernandez*, 820 F. App'x 593 (9th Cir. 2020). *Id.*

The first case, *Jarvis*, closely mirrors those discussed above. 726 F. App'x at 666–67. The Jarvises filed for bankruptcy, received a discharge, and never made another payment on their loans. *Id.* They then filed suit to quiet title. *Id.* The district court granted summary judgment in

favor of the Jarvises, holding that the "statute of limitations to foreclose on the deed of trust ran from the last installment due before the Jarvises' bankruptcy discharge in February 2009 and expired before the Jarvises brought this quiet-title action nearly seven years later in February 2016." *Id.* at 667. Relying on *Edmundson* for interpretation of Washington law regarding the statute of limitations, the Ninth Circuit affirmed. *Id.* at 666–67.

     *Hernandez* looks similar. Hernandez had a deed of trust with Deutsche Bank, serviced by Franklin Credit Management Corporation. *Hernandez*, 2019 WL 3804138, at *1. He defaulted on the deed of trust by failing to make his required monthly payment. *Id.* He and his wife filed for Chapter 7 bankruptcy and received discharge. *Id.* He never made another payment on the note. *Id.* He filed a Chapter 13 bankruptcy petition and sought to bar any claim on the deed of trust as time-barred under the statute of limitations. *Id.* Relying on *Edmundson*, the district court and the Ninth Circuit both agreed that any claim on the deed of trust was time-barred. *Id.* at *2.

     But both *Jarvis* and *Hernandez* are no longer good law. In *Copper Creek* and *Merritt*, the Washington Supreme Court disavowed this aspect of *Edmundson*. *See Merritt*, 1 Wn.3d at 707 n.8; *Copper Creek*, 1 Wn.3d at 718. In doing so, the Court specifically cited *Jarvis* and *Hernandez*. *See id.* The Court explained: "We note that despite the lack of authority supporting *Edmundson*'s dicta, some subsequent cases (almost exclusively unpublished federal cases) adopted *Edmundson*'s dicta as a rule and applied or expanded it." *Merritt*, 1 Wn.3d at 707 n.8 (citing cases).

     This Court must follow the Washington Supreme Court's decisions in *Merritt* and *Copper Creek*. Generally, federal courts must heed state court interpretations of state laws. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938); *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). When a federal court is deciding an issue of state law, it is "bound by the pronouncements of the state's highest court on applicable state law." *Ticknor v. Choice Hotels*

*Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001) (citing *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 524 (9th Cir. 1989)); *Fid. Union Tr. Co. v. Field*, 311 U.S. 169, 17 (1940) ("The highest state court is the final authority on state law.") (citations omitted).

In diversity cases, federal courts must apply state substantive law. *Hanna v. Plumer*, 380 U.S. 460, 467 (1965). To determine whether a law is substantive, courts ask if application of the law would change the outcome of the case. *Id.* at 468. State laws setting the statute of limitations are inherently substantive. *See Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 110–11 (1945).

Given that Roe claims diversity jurisdiction in this case, Dkt. 1 ¶¶ 3.1–3.12, the Court is bound to follow the Washington Supreme Court's interpretation of applicable substantive law. *See Hanna*, 380 U.S. at 467. The Court is thus required to adhere to the Washington Supreme Court's interpretation of the statute of limitations in *Merritt* and *Copper Creek. See Ticknor*, 265 F.3d at 939. Both cases held that the "six-year statute of limitations to foreclose on a deed of trust securing an installment loan accrues with each unpaid installment, even after the borrower's personal liability has been discharged in bankruptcy." *Copper Creek*, 1 Wn.3d at 718 (citing *Merritt*, 1 Wn.3d at 692). That is the law this Court must apply. *See Hanna*, 380 U.S. at 467; *see also Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011), certified question answered, 227 Ariz. 121, 254 P.3d 360 (2011) ("A federal court sitting in diversity applies the substantive law of the state, including the state's statute of limitations. . . . Federal courts must abide by a state's tolling rules, which are integrally related to statutes of limitations.") (cleaned up); *G & G Prods. LLC v. Rusic*, 902 F.3d 940, 946 (9th Cir. 2018) ("Because our jurisdiction rests on the parties' diversity of citizenship, we apply substantive state law, including state law regarding statutes of limitations and tolling.") (citation omitted).

And this Court will not be alone: three other federal courts have already relied on *Copper Creek* and *Merritt. See Simmons v. HSBC Bank Nat'l Ass'n* (*In re Simmons*), No. 2:23-BK-

10399-CMA, 2024 WL 1479691 (B.A.P. 9th Cir. Apr. 5, 2024); *Marquez Vargas v. RRA CP Opportunity Tr. 1*, No. 2:22-CV-01440-LK, 2024 WL 3992573 (W.D. Wash. Aug. 29, 2024); *Twinrock Holdings, LLC v. CitiMortgage, Inc.*, No. 2:22-cv-00143-JAD-VCF, 2023 U.S. Dist. LEXIS 14186, at *4-5 (D. Nev. Jan. 26, 2023). Thus, Roe's reliance on *Jarvis* and *Hernandez* is misplaced. *Copper Creek* and *Merritt* are controlling.

3.    *There is no Supremacy Clause conflict between Washington law and federal bankruptcy law.*

Roe argues that the bankruptcy code (11 U.S.C. § 524(a)(2)) bars Defendant's claims against her property. Dkt. 1 ¶¶ 1.12, 2.25. She claims that the federal bankruptcy code conflicts with *Merritt* and *Copper Creek. Id.* Roe relies on the text of the statute and the related Senate Report to support this argument. Dkt. 20 at 5–6.

Defendants respond that the applicable provision of the bankruptcy code only acts as an injunction against personal liability, not *in rem* liability. Dkt. 12 at 6; Dkt. 22 at 5. They thus argue that there is no conflict between state and federal law. Dkt. 12 at 6; Dkt. 22 at 5. Defendants point out that the statute and related report only dispose of personal liability. Dkt. 12 at 6 (citing 11 U.S.C. § 524(a)(2)). This creates no conflict between the federal bankruptcy code and Washington state law regarding installment contracts: by only ridding the plaintiff of personal liability on her debt, the federal statute leaves any interest in property intact. *See id.*; *see also* Dkt. 22 at 5.

The Court agrees that there is no conflict between federal and state law. 11 U.S.C. §524(a)(2) states:

> A discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

The Supreme Court has held that the statute discharges *in personam*, but not *in rem*, liability. Notwithstanding discharge under Chapter 7, "the [creditor]'s right to proceed against [the debtor] *in rem* survive[s][.]" *Johnson v. Home State Bank,* 501 U.S. 78, 80 (1991) (citations omitted). In cases "where the creditor holds a secured interest in property subject to a scheduled debt, a discharge extinguishes only the personal liability of the debtor." *In re Garske*, 287 B.R. 537, 542 (B.A.P. 9th Cir. 2002). Bankruptcy discharge "leave[s] unimpaired a creditor's right to proceed *in rem* against the debtor's property." *In re Blendheim*, 803 F.3d 477, 494 (9th Cir. 2015) (first citing *Johnson*, 501 U.S. at 84; and then citing 4 Collier on Bankruptcy ¶ 524.02 ("[T]he provisions [of § 524] apply only to the personal liability of the debtor, so they do not affect an otherwise valid prepetition lien on property.")).

Still Roe points the Court to the Senate's accompanying report for the statute. Dkt. 20 at 5. The report explains, in relevant part:

> Subsection (a) specifies that a discharge in a bankruptcy case voids any judgement to the extent that it is a determination of the personal liability of the debtor with respect to a prepetition debt, and operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, including telephone calls, letters, and personal contacts, to collect, recover, or offset any discharged debt as a personal liability of the debtor, or from property of the debtor, whether or not the debtor has waived discharge of the debt involved. The injunction is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts.
>
> The change is consonant with the new policy forbidding binding reaffirmation agreements under proposed 11 U.S.C. 524(b), and is intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it. In effect, the discharge extinguishes the debt, and creditors may not attempt to avoid that. The language 'whether or not discharge of such debt is waived' is intended to prevent waiver of discharge of a particular debt from defeating the purposes of this section. It is directed at waiver of discharge of a particular debt, not waiver of discharge in toto as permitted under section 727(a)(9).

S. REP. 95-989, 80, 1978 U.S.C.C.A.N. 5787, 5866. Roe argues that "the only rational reading of [the report] is that Congress wanted to make clear that no limitations period can be tied to a

1    note's payment obligation or due date because those obligations are terminated and those due

2    dates no longer exist." Dkt. 20 at 6.

3         Roe is correct that the bankruptcy code is extremely broad. The code defines "debt" as a

4    "liability on a claim." 11 U.S.C § 101(12). *Goudelock v. Sixty-01 Ass'n of Apartment Owners*,

5    895 F.3d 633, 637 (9th Cir. 2018). A claim is described as a "right to payment, whether or not

6    such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

7    unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* at 637–38 (cleaned

8    up). "This definition of a claim is very broad, encompassing all of a debtor's obligations 'no

9    matter how remote or contingent.'" *Id.* at 638 (cleaned up). Congress thus intended the

10   bankruptcy code to provide "the broadest possible definition" of claims so that "all legal

11   obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the

12   bankruptcy case." *In re Christian Life Ctr.*, 821 F.2d 1370, 1375 (9th Cir. 1987) (citing S. Rep.

13   No. 989, 95th Cong., 2d Sess. 21, 22, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5807, 5808).

14        Though the bankruptcy code is far-reaching, it is not as vast as Roe advocates.

15   Discharged legal obligations are limited to those that create a "right to payment." *See id.* Secured

16   debts do not always create a right to payment. *See In re Garske*, 287 B.R. at 542. The debtor is

17   "not personally liable on any deficiency that may arise because the underlying debt creating the

18   personal liability has been discharged." *Id.* The creditor cannot pursue payment, only

19   repossession or foreclosure. *Id.* (citing *Johnson*, 501 U.S. at 83). *In rem* liability survives. *See*

20   *id.*; *see also In re Blendheim*, 803 F.3d at 494.

21        Plaintiffs' interpretation of the bankruptcy code is simply too broad. Chapter 7 discharges

22   of only *in personam*, not *in rem*, liability. Thus, Plaintiffs' Supremacy Clause argument fails.

23   The Motion to Dismiss for failure to state a claim is GRANTED.

24                          **IV.    MOTION FOR SANCTIONS**

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION
FOR SANCTIONS - 15

**A.     Legal Standard**

Defendants seek sanctions against Plaintiff's counsel under Rule 11 of the Federal Rules of Civil Procedure. Dkt. 33 at 1. Rule 11 authorizes courts to impose various sanctions to "deter baseless filings and curb abuses." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 553 (1991). An attorney is subject to Rule 11 sanctions "when he presents to the court 'claims, defenses, and other legal contentions . . . [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]'" *Holgate v. Baldwin*, 425 F.3d 671, 675–76 (9th Cir. 2005) (quoting Fed. R. Civ. P. 11(b)(2)). "A party violates Federal Rule of Civil Procedure 11(b) by submitting pleadings for an improper purpose or making claims or factual contentions without legal or evidentiary support." *Simmonds v. Credit Suisse Sec. (USA) LLC*, No. C12-1937-JLR, 2013 WL 2319401, at *2 (W.D. Wash. May 28, 2013). Rule 11 is meant "to address frivolous or abusive filings." *Ringgold-Lockhart v. Cnty. of Los Angeles*, 761 F.3d 1057, 1065 (9th Cir. 2014).

Rule 11 sanctions are "an extraordinary remedy" and thus "reserved for the rare and exceptional cases where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Lee v. Pow Ent., Inc.*, No. 20-55928, 2021 WL 5768462, at *2 (9th Cir. Dec. 6, 2021) (cleaned up).

**B.     Discussion**

> *1.     Defendants' motion violates the 21-day safe harbor requirement.*

Rule 11(c) authorizes the court to award sanctions subject to certain conditions. One such condition is the 21-day "safe harbor" laid out in Rule 11(c)(2). The rule clarifies that a "motion must [first] be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected

within 21 days after service or within another time the court sets." The Advisory Committee

notes to the rule are instructive:

> These provisions are intended to provide a type of "safe harbor" against motions
> under Rule 11 in that a party will not be subject to sanctions on the basis of
> another party's motion unless, after receiving the motion, it refused to withdraw
> that position or to acknowledge candidly that it does not currently have evidence
> to support a specified allegation. Under the former rule, parties were sometimes
> reluctant to abandon a questionable contention lest that be viewed as evidence of
> a violation of Rule 11; under the revision, the timely withdrawal of a contention
> will protect a party against a motion for sanctions.
>
> . . .
>
> To stress the seriousness of a motion for sanctions and to define precisely the
> conduct claimed to violate the rule, the revision provides that the "safe harbor"
> period begins to run only upon service of the motion. In most cases, however,
> counsel should be expected to give informal notice to the other party, whether in
> person or by a telephone call or letter, of a potential violation before proceeding
> to prepare and serve a Rule 11 motion.

*Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998) (quoting Adv. Comm. Notes, 1993 Amend.).

Following these notes, the Ninth Circuit has long held that merely warning a party of

possible Rule 11 sanctions is insufficient to meet the notice requirements of Rule 11. *See, e.g.*,

*Barber*, 146 F.3d at 710 ("[W]arnings [are] not motions . . . and the Rule requires service of a

motion."); *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 789 (9th Cir. 2001) ("Rainbow did not

serve the plaintiffs with the motion in advance of filing and thus did not comply with the twenty-

one day advance service provision."); *Blumberg v. Gates*, 152 F. App'x 652, 653 (9th Cir. 2005)

("We have thus rejected litigants' attempts to cure violations of the mandatory safe harbor period

by arguing that the non-movant had actual notice of the violation.").

Defendants moved for sanctions on September 10, 2024. Dkt. 33 at 17. That same day,

they served Plaintiff's counsel with notice of the motion. *Id.* Defendants had previously notified

Plaintiff's counsel that, were they to refile the case in federal court, Defendants would move for

sanctions. *See* Dkt. 34-15 at 2–3. But such notice is insufficient to satisfy the 21-day safe harbor

requirements. *Barber*, 146 F.3d at 710. This warning is not the same as serving the motion itself on Plaintiff's counsel. *See id*. Thus, Defendants' motion for sanctions under Rule 11 is DENIED.

2.    *Defendants' motion for sanctions under 28 U.S.C. § 1927 is barred.*

Defendants also seek sanctions under 28 U.S.C. § 1927. Dkt. 33 at 1. Case law prohibits application of sanctions under 28 U.S.C. § 1927 to initial pleadings. *See, e.g.*, *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996); *De Dios v. Int'l Realty & Investments*, 641 F.3d 1071, 1076 (9th Cir. 2011) (recognizing that "sanctions under 28 U.S.C. § 1927 do not apply to complaints or initial pleadings"). The statute provides in relevant part: "Any attorney . . . who so *multiplies the proceedings* in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (emphasis added). Thus, the filing of a complaint "may not be sanctioned pursuant to § 1927." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d at 435. This is true even where previous lawsuits have already been filed. *See, e.g.*, *Best Odds Corp. v. iBus Media Ltd.*, 657 F. App'x 641, 642 (9th Cir. 2016) (finding that district court abused its discretion by imposing sanctions under § 1927 based on the filing of a second lawsuit); *Brands v. First Transit, Inc.*, 278 F. App'x 722, 725 (9th Cir. 2008) (explaining that filing of complaints in state court, which were voluntarily dismissed, was not a sufficient basis for § 1927 sanctions in case filed before federal court).

Defendants move for sanctions under § 1927 based on Roe's filing of a complaint in the present suit. Dkt. 33 at 2. And as Defendants concede, they threatened to bring sanctions for the mere act of filing the complaint in federal court. *See* Dkt. 34-15 at 2–3. Despite the previous litigation in state court, Defendants cannot now move for sanctions based on the filing of the complaint in this case. The motion for sanctions under § 1927 is DENIED.

3.    *Defendants' motion for sanctions under Local Rule 11(c)(3) is denied.*

Finally, Defendants move for sanctions under Local Rule 11(c)(3). Dkt. 33 at 1. The rule

provides:

> An attorney or party who without just cause . . . presents to the court unnecessary
> motions or unwarranted opposition to motions, . . . or who otherwise so multiplies
> or obstructs the proceedings in a case may, in addition to or in lieu of the
> sanctions and penalties provided elsewhere in these rules, be required by the court
> to satisfy personally such excess costs and may be subject to such other sanctions
> as the court may deem appropriate.

Local Civ. R. 11(c)(3). The Ninth Circuit has "consistently upheld the power of the

district court to sanction attorneys for violations of local rules." *Zambrano v. City of Tustin*, 885

F.2d 1473, 1477 (9th Cir. 1989). But "power to impose such sanctions is limited." *Guild Mortg.*

*Co. LLC v. CrossCountry Mortg. LLC*, No. C21-1376-JCC-MLP, 2022 WL 18999842, at *8

(W.D. Wash. Dec. 6, 2022), report and recommendation adopted, No. C21-1376-JCC-MLP,

2023 WL 1860663 (W.D. Wash. Feb. 9, 2023). Courts may impose sanctions "in the form of

attorney's fees under local rules only for 'bad faith actions or willful disobedience of court

orders or rules.'" *Id.* (quoting *Zambrano*, 885 F.2d at 1481).

Defendants argue that, because Roe and her counsel refiled in federal court knowing that

*Copper Creek* and *Merritt* were controlling, they acted in bad faith. *See* Dkt. 33 at 4–5. But this

court does not find sufficient evidence to support a finding that Roe's filing of this suit is

tantamount to bad faith or willful disobedience. "Bad faith is present when an attorney

knowingly or recklessly raises a frivolous argument . . . or argues a meritorious claim for the

purpose of harassing an opponent." *Bell v. Nat'l Credit Servs. Inc.*, No. 219CV01727RAJBAT,

2020 WL 8832899, at *7 (W.D. Wash. Oct. 14, 2020), report and recommendation adopted, No.

219CV01727RAJBAT, 2021 WL 928161 (W.D. Wash. Mar. 11, 2021) (quoting *Est. of Blas*

*Through Chargualaf v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986)).

As laid out above in Section B.3., Roe's arguments about the Supremacy Clause and the application of *Copper Creek* and *Merritt* to her case fail. But this is not evidence that counsel acted in bad faith. Defendants argue that the four years of litigation here are evidence of bad faith pursuit of a meritless claim. Dkt. 33 at 15–16 ("There is no legitimate basis for an attorney . . . to file multiple frivolous lawsuits in different courts to try to achieve a favorable outcome. . . . While one can be forgiven for making a single mistake, that is not what has happened here. . . . Yet here we are, four years later, arguing the merits of well-settled law."). These were, as Defendants acknowledge, "completely new arguments." *Id.* at 12. The federal court decisions following *Copper Creek* and *Merritt* had not addressed possible Supremacy Clause conflicts between the cases and the federal bankruptcy code. *See generally Twinrock*, 2023 U.S. Dist. LEXIS 14186; *In re Simmons*, 2024 WL 1479691.

Defendants also claim that Roe admitted in her state court briefing that *Copper Creek* and *Merritt* were controlling. Dkt. 33 at 11–12. This overstates her concession. In her motion to stay proceedings while *Copper Creek* was pending, Roe explained:

> Whatever Copper Creek means, however, will soon be clear because the "last installment payment date" initiator issue, in addition to others, is being heard in February 2024 by the Washington Supreme Court. Therefore, the 12(b)(6) argument raised by defendants in the above-captioned action may be voided, but will certainly be clarified, when *Copper Creek* is decided at the State Supreme Court level, so in light of the irretrievable nature of recovery of title if, and any chance to defend it may pass due to defendants 12(b)(6) motion, Roe urges the above-captioned court to issue a stay concerning the hearing of the 12(b)(6) motion until a decision on *Copper Creek* from the Washington Supreme Court issues.

Dkt. 34-5 at 6. Roe never said that Copper Creek would be dispositive. *Id.*

Defendants further argue that Roe's late response to its motion for sanctions is evidence of bad faith. Dkt. 42 at 3 ("Plaintiff's flouting of this Court's rules supports Defendants' contention that Plaintiff has not only filed this case in bad faith, but indeed every aspect of her

handling of this case has been in bad faith, thus warranting sanctions against her and her attorney."). Again, the Court disagrees. Plaintiff's counsel responded, explaining that the lateness was due to a misunderstanding of the rules. Dkt. 45 at 5. The local rules changed in April 2024. *Id.* There is no evidence that counsel's failure to respond on time was in bad faith. *See Zambrano*, 885 F.2d at 1484 ("Although counsel's misunderstanding may reflect a lack of diligent attention to the local rules, nothing in the record suggests any bad faith, or even gross negligence, on his part.").

## V.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss with prejudice (Dkt. 12) and DENIES Defendants' motion for sanctions (Dkt. 33).

Dated this 1st day of November, 2024.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION FOR SANCTIONS - 21